O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ASPEN HOLLIDAY, | ) | Case No. EDCV 09-1431-OP |
| Plaintiff, | ) ) | |
| v. | ) | MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

///
///
///

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 7, 9.)

[2] As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

## I.
## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") complied with the Appeals Council remand order to properly consider the lay witness statement;

2. Whether the ALJ complied with the Appeals Council remand order to properly consider Dr. Afghan's opinion;

3. Whether the ALJ complied with the Appeals Council remand order to properly consider Dr. Quion's opinion;

4. Whether the ALJ complied with the Appeals Council remand order to properly consider Plaintiff's residual functional capacity ("RFC");

5. Whether the ALJ posed a complete hypothetical to the vocational expert ("VE"); and

6. Whether the ALJ properly held that Plaintiff can perform the job of mail clerk, library page, and cleaner.

(JS at 2-3.)

## II.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## III.

## DISCUSSION

**A.  Background and ALJ Decisions.**

On February 22, 2007, ALJ F. Keith Varni rendered an unfavorable decision on Plaintiff's application for disability and disability insurance benefits allegedly beginning on May 1, 2002 ("2007 Decision"). Plaintiff filed a civil action in this Court, entitled Holliday v. Astrue, No. 07-1075-OP. The parties stipulated to a remand of that action. (No. CV 07-1075-OP, Dkt. No. 12.)

On May 6, 2008, the Appeals Council remanded the case for further proceedings consistent with the remand order of this Court. (Administrative Record ("AR") at 322-24.) The Appeals Council specifically noted:

> [The ALJ] did not give adequate consideration to medical evidence, including opinion, evidence from the claimant's treating physicians. Although the decision contains mention of treating psychiatrist Dr. Afghan's treatment notes, there is no mention of the various certifications he made concerning periods he indicated the claimant was unable to work or, from those opinions from Dr. Agnes Quion, a general practitioner. While Dr. Quion's opinion was addressed in the hearing decision as it appears in Tr. 250-251, the Judge apparently identified Dr. Quion [as] Dr. Olguin (Tr. 18). . . . [¶] In addition, the hearing decision contains no mention of the claimant's allegations of vomiting and excessive bowel movements or the effect of these

> symptoms, if supported by the record, on her ability to perform past relevant work as a cashier. Further consideration of these allegations as well as testimony and statements from third parties (Tr. 296-298 and 90-98) is also necessary.

(AR at 322 (citations omitted).)

The Appeals Council directed the ALJ to: (1) obtain additional evidence concerning Plaintiff's mental health impairments in order to complete the administrative record; (2) further evaluate Plaintiff's mental impairment in accordance with the "special technique described in 20 CFR 404.1520a"; (3) further evaluate Plaintiff's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms; (4) give further consideration to Plaintiff's RFC during the entire period at issue; and (5) if warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the occupational base. (Id. at 323.)

On January 26, 2009, Plaintiff appeared and testified at a hearing, again before ALJ Varni. (Id. at 356-77.) On March 31, 2009, an unfavorable decision issued ("2009 Decision"). (Id. at 303-13.) Plaintiff did not seek Appeals Council review of the 2009 Decision. (Id. at 300-02.)

In his 2009 Decision, the ALJ found that Plaintiff had the severe impairments of musculoskeletal disorder with residual pain; diabetes; obesity; and agoraphobia and panic disorder. (Id. at 305.) He found Plaintiff had the RFC to perform medium work and could occasionally lift and/or carry fifty pounds and frequently twenty-five pounds; could stand and/or walk six hours in an eight-hour work day and sit for six hours; could frequently walk on uneven terrain, climb ladders, or work at heights; could frequently bend, stoop, kneel, crawl and crouch; was precluded from working with heavy moving machinery, and was limited to non-public, routine, repetitive, entry-level work with only superficial contact with

co-workers and supervisors. (Id. at 307.) The ALJ concluded Plaintiff could not perform her past relevant work but that there were jobs in significant number in the national economy she could perform such as the light level jobs of mail clerk, library page, and cleaner. Thus, the ALJ found that Plaintiff was not disabled. (Id. at 312-13.)

**B.     Failure to Comply with Remand Order Regarding Lay Witness Testimony.**

Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provide that, in addition to medical evidence, the Commissioner "may also use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [his] ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). This applies equally to the sworn hearing testimony of witnesses (see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), as well as to unsworn statements and letters of friends and relatives. See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000). If the ALJ chooses to reject such evidence from "other sources," he may not do so without comment. Nguyen, 100 F.3d at 1467. The ALJ must provide "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). Reasons that may be "germane" to a particular witness include that the witness's testimony is contradicted by the medical evidence of record. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence"); Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) ("The ALJ properly discounted lay testimony that conflicted with the available medical evidence.").

In this case, Plaintiff's friend, Ruthie Carrillo, stated in a third-party adult

function report that Plaintiff cannot do household tasks for more than one hour if her legs hurt, does not trust anybody, does not follow spoken instructions very well because she forgets what was said, and can only pay attention for about forty-five minutes. (AR at 90-94.) In addition, Ms. Carrillo reported that Plaintiff's illness, injuries and disabling conditions affect her ability to lift, stand, reach, walk, climb stairs, remember things, concentrate, complete tasks, understand and get along with others. (Id. at 95-98.)

Plaintiff contends that on remand the ALJ failed to consider Ms. Carrillo's testimony "regarding the plaintiff's recurring pain in her legs, [and] her limited ability to follow instructions and pay attention for more than 45 minutes." (JS at 3.) Therefore, she alleges, the ALJ failed to comply with the Appeals Council remand order to properly consider these lay witness statements and did not give reasons germane to the witness for rejecting her testimony. (Id. at 3-4.)

An ALJ must comply with a district court's remand order. See, e.g., Sullivan v. Hudson, 490 U.S. 877, 886, 109 S. Ct. 2248, 104 L. Ed. 2d 941 (1989) ("Deviation from the [district] court's remand order in the subsequent administrative proceedings is itself legal error."). The same rule applies to orders from the Appeals Council. 20 C.F.R. § 404.977(b) (an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeal Council's remand order."); see also Thompson v. Barnhart, No. Civ.A. 05-395, 2006 WL 709795, at *11-12 (E.D. Pa. Mar. 15, 2006) (holding that ALJ committed legal error by failing to obtain mental status examination as directed by Appeals Council).[3]

---

[3] The Commissioner argues that "the Appeal Council's remand order . . . is not subject to judicial review." (JS at 5.) The Commissioner argues, therefore, that this Court may only consider the ALJ's final decision, apparently without considering whether it complied with the Appeal Council's order. (Id.) This
(continued...)

In his 2009 Decision, the ALJ stated:

> Lastly, I have also generously considered the claimant's testimony, witness testimony, the objective medical evidence, and other relevant documentary evidence. I find that from the alleged date of onset through the present the claimant was able to perform sustained full-time work on a regular and continuous basis within her residual functional capacity as described herein. This finding is consistent with the documentary evidence and testimony.

(AR at 311.)

This is word for word what the ALJ stated in his original decision regarding "witness testimony." (Id. at 18.) As such, it is not entirely clear whether the ALJ complied with the remand order to give "further consideration" to "testimony and statements from third parties." (Id. at 322.)

However, it appears to this Court that this statement, found in both the 2007 and 2009 Decisions, is not necessarily an indication that the ALJ rejected Ms. Carrillo's statements. Indeed, the ALJ seems to be indicating that he considered

---

[3](...continued)
Court does not agree. Had Plaintiff sought Appeals Council review of the ALJ's remand order and review been denied, examination of whether the ALJ complied with the remand order might not be required. See, e.g., Tyler v. Astrue, 305 Fed. App'x 331, 332 (9th Cir. 2008) (citations omitted) (when the Appeals Council denied review of the ALJ's second decision, it made that decision final, and declined to find that the ALJ had not complied with its remand order); see also Allen v. Astrue, No. EDCV 08-1089-RC, 2009 WL 3244731 (C.D. Cal. Oct. 7, 2009) (citing Tyler, 305 Fed. App'x at 332 and declining to evaluate whether the second decision complied with the remand order after the Appeals Council denied review of the second decision). In this case, however, Plaintiff did not seek review of the second decision from the Appeals Council. Therefore, the Court finds it appropriate to consider the issue of compliance with the remand instructions.

the witness's statements and determined that they were consistent with the substantial evidence of record and with his RFC determination.  This Court agrees.

In her statement, Ms. Carrillo indicated she spends about five to fifteen hours per week with Plaintiff.  (Id. at 90.)  With regard to leg pain, she stated that if Plaintiff's leg hurts, then she needs help with cleaning and cooking.  (Id. at 92.)  She also noted in several other portions of the form, however, that Plaintiff's activities include taking care of her son's needs, which "takes up most of her time," and that "she does these things everyday and does them well" (id. at 94), she goes to sporting events for her son, and is able to sit and watch her son's games (id. at 94, 98), she goes outside the house a couple of times a day "to take her son to the bus stop [or] do things like shopping" (id. at 94, 98), she is able to drive (id. at 93), and she is much more apt to remember things if she writes them down (id. at 92, 95).

The ALJ took Plaintiff's inability to pay attention and remember into consideration when he found she could do only routine, repetitive, entry-level work, and the record supports the ALJ's finding that Plaintiff is able to perform sustained full-time work on a regular and continuous basis within her residual functional capacity as described by the ALJ.  (See Discussion infra Part III.D.)  Thus, it appears that the ALJ's RFC finding is consistent with Ms. Carrillo's report with respect to these issues.

The ALJ found Plaintiff had the severe impairment of musculoskeletal disorder with residual pain, based on her "history of back pain with radicular symptoms going to the left leg" (id. at 305-06), a problem also noted by Ms. Carrillo.  The ALJ also found, however, that the medical evidence showed Plaintiff had normal gait and balance, and that her range of motion of lower extremities was "grossly within normal limits."  (Id. at 306.)  He noted that she regularly drives long distances and takes care of her son and the household (id. at 308), regularly babysits her six-year-old niece (id.), and that her low back pain had

been treated with conservative, routine care (id. at 309). Consulting examiners found she could do a full-range of medium work (id. at 309-10), and there was a full range of motion of the extremities, joints, and spine, with no muscle atrophy, spasm, or neurological deficits, and no need for assistive devices (id. at 310). Although two treating physicians, Dr. Afghan and Dr. Quion, completed forms for county welfare benefit purposes suggesting total disability, the ALJ did not give these "check list style disability forms" any significant weight, as they stated no specific limitations, and relied on no medical evidence, whether subjective or objective, to support their statements. (Id. at 310-11; see also Discussion infra Part III.C.) The ALJ concluded that the limitations he found were "consistent with the limitations described by the consultative examiners, State agency physicians and the actual treatment records." (AR at 311.) They also appear to be consistent with Ms. Carrillo's report.

However, even if it was error for the ALJ not to provide further information regarding his treatment of Ms. Carrillo's statement, any error was harmless unless a reasonable ALJ would have reached a different conclusion had the error not occurred. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006). Applying this standard, as discussed above and as further discussed in Parts III.C and III.D infra, the Court finds that the record reflects medical and other evidence sufficient such that consideration of Ms. Carrillo's opinion would not cause a reasonable ALJ to find Plaintiff disabled. Thus, any error was harmless.

**C.** **Failure to Comply with Remand Order Regarding Opinions of Dr. Afghan and Dr. Quion.**

    **1.** **Applicable Law.**

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual.

9

McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

However, the Ninth Circuit also has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). A treating or examining physician's opinion based on the plaintiff's own complaints may be disregarded if the plaintiff's complaints have been properly discounted. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Additionally, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v.

Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

### 2. **The Remand Order.**

As set forth in Part III.A supra, the remand order specifically noted that the ALJ's 2007 Decision contained no mention of certifications made by Dr. Afghan and Dr. Quion concerning periods Plaintiff was unable to work. (AR at 322.)

#### a. **Dr. Afghan.**

Plaintiff notes that in a September 20, 2004, medical report, Dr. Afghan reported that the onset of Plaintiff's incapacity was October 16, 2003, and that Plaintiff's physical/mental ability was substantially reduced by incapacity due to panic attacks. (JS at 7 (citing AR at 123).) In a July 11, 2005, follow-up note, Dr. Afghan diagnosed Plaintiff with panic disorder and agoraphobia. (AR at 165, 175, 184, 186.) Plaintiff claims the ALJ failed to discuss or even mention these findings, and failed to comply with the remand order to properly consider the treating source evidence. (JS at 8.)

A review of the ALJ's 2009 Decision, however, shows that he adequately addressed Dr. Afghan's findings. Indeed, the ALJ even accepted Dr. Afghan's findings that Plaintiff had the severe impairments of panic disorder and agoraphobia. (AR at 305.)

With regard to the records specifically referenced by Plaintiff, i.e., Dr. Afghan's treatment notes at AR 165, 175, 184, and 186, the ALJ noted that Dr. Afghan diagnosed Plaintiff with panic disorder and agoraphobia, but that Plaintiff "was doing well overall and responding to prescribed treatment." (AR at 316.) Indeed, Plaintiff had told Dr. Afghan that her medication was helping her. (Id.) Moreover, the treatment Plaintiff was receiving for these disorders was "minimal." (Id.) See, e.g., Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2005) (impairments that can be controlled effectively with medication are not disabling) (citations omitted).

With regard to the forms completed by Dr. Afghan (AR at 123-26), the ALJ noted these were "check list style disability forms" which were completed for the county welfare department in order to obtain welfare benefits, and that the forms noted no specific limitations or medical evidence, subjective or objective, to support the statements of disability. (Id. at 311.) This is a specific and legitimate reason for rejecting those certifications. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because they were check-off reports that did not contain any explanation of the bases of their conclusions); see also Morgan, 169 F.3d at 602.

Based on the foregoing, the Court finds no error in the ALJ's rejection of Dr. Afghan's reports.

### b. Dr. Quion.

Plaintiff states that in an April 2006 "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)" ("Medical Opinion"), Dr. Agnes Quion reported that Plaintiff's impairments affect her ability to reach, handle, finger, feel, and push/pull.[4] (JS at 10 (citing AR at 251).) In that Medical Opinion, Dr. Quion also reported that Plaintiff should avoid all exposure to extreme cold and heat, fumes, odors, dust and gases, and hazards, and moderate exposure to wetness and humidity, and that Plaintiff's impairment would cause her to be absent from work about three times each month. (AR at 251.) Plaintiff claims the ALJ failed to discuss or even mention these findings, and, therefore, failed to comply with the remand order to properly consider the treating source evidence "in its entirety." (JS at 11.)

A review of the record however, shows that in his 2007 Decision the ALJ

---

[4] Plaintiff misstates Dr. Quion's findings. (See JS at 10.) Dr. Quion indicated physical impairments only in reaching and pushing/pulling. (AR at 251.) She indicated Plaintiff had no limitation in handling (gross manipulation), fingering (fine manipulation), or feeling. (Id.)

specifically and adequately addressed Dr. Quion's April 2006 "Medical Opinion":[5]

> The claimant's treating physician Dr. Olguin [sic], completed a pre-printed form labeled, "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)" in April 2006 (Exhibit 15F, p.3). Therein, he [sic] stated that the claimant needs to change positions every five minutes; lie down at unpredictable intervals; and that she can never stoop, crouch, or climb ladders. He [sic] also indicates that the claimant can sit, stand, and walk for less than two hours in a day. However, there were limited to no objective findings to support his [sic] opinion (11F). Moreover, Dr. Olguin's [sic] opinion is contrary to Dr. Fabella's opinion, which is supported by diagnostic findings, and clinical data. Therefore, I give little weight to Dr. Olguin's [sic] opinion.

(AR at 18.)

Consequently, the reasons given by the ALJ for rejecting Dr. Quion's April 2006 opinion were specific and legitimate.[6] Thomas, 278 F.3d at 957. The 2009

---

[5] As noted by the Appeals Council in its remand order, in referring to this "Medical Opinion" document in the 2007 Decision, the ALJ misidentified Dr. Quion as Dr. Olguin. (AR at 322 (citing id. at 18 (referring to Exhibit 15F, the Medical Opinion)).) The misidentification is not surprising as upon review, "Olguin" is not a far-fetched interpretation of Dr. Quion's virtually illegible signature on that pre-printed form. (Id. at 251.) Plaintiff confirms that this Medical Opinion, Exhibit 15F, was filled out by Dr. Quion. (See, e.g., JS at 11.) While it would have been preferable for the ALJ to rectify this identification error in his 2009 Decision, it would elevate form over substance to remand for the limited purpose of clarifying this error, especially since there is no dispute as to the author of the Medical Opinion, and no dispute that the Medical Opinion referred to in the 2007 Decision and at issue herein is at Exhibit 15F, pages 249-52, in the Administrative Record.

[6] Although it does not appear to be the case, to the extent Plaintiff may be
(continued...)

Decision specifically incorporated the earlier 2007 Decision, including this finding. (Id. at 309 ("The prior decision dated February 22, 2007, is incorporated by reference and is the decision on remand as supplemented herein.") (citation omitted).) Thus, there was no error.

**D.**     **Failure to Comply with the Remand Order Regarding Plaintiff's RFC.**

Plaintiff contends the ALJ failed to consider Dr. Afghan's diagnoses of panic disorder and agoraphobia, and Dr. Quion's limitations as set forth in the Medical Opinion, when determining Plaintiff's RFC. (JS at 14.)

In arriving at Plaintiff's RFC, the ALJ credited the opinions of consultative examiners Dr. To, Dr. Bagner, and Dr. Fabella. (AR at 309, 310, 311.) He also gave Plaintiff "every benefit of the doubt." (Id. at 311.)

Dr. To examined Plaintiff and found that Plaintiff could lift and carry up to fifty pounds occasionally and twenty-five pounds frequently, could stand or walk six hours in an eight-hour workday, could sit without limit, had no manipulative limitations, could perform all postural activities on a frequent basis, and should avoid working with heavy and moving machinery. (Id. at 340-41.) The ALJ fully adopted Dr. To's opinion into the physical RFC finding. (Id. at 307.) Dr. To's

---

⁶(...continued)
claiming that the ALJ failed to provide specific and legitimate reasons for rejecting other opinions of Dr. Quion, the Court finds this claim also is without merit. With regard to Dr. Quion's other records, the ALJ specifically noted in the 2009 Decision that Plaintiff's treatment from Dr. Quion consisted of "routine, non-emergency care from November 2001 through May 15, 2006," for diabetes and back pain related to scoliosis, and that diagnostic studies showed minimal curvature and minimal treatment with Motrin and Vicodin as needed. (Id. at 309.) He also rejected Dr. Quion's welfare benefit forms because they did not provide any discussion of specific limitations and were not supported by the evidence. (Id. at 311.) He also rejected an April 5, 2005, letter from Dr. Quion as unsupported by the evidentiary record. (Id.) These are all specific and legitimate reasons, supported by substantial evidence of record to reject Dr. Quion's opinions.

opinion constituted substantial evidence upon which the ALJ was permitted to rely. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("[a consulting examiner's] opinion alone constitutes substantial evidence, because it rests on his own independent examination of [claimant]").

Dr. Fabella, another consultative examiner, opined that Plaintiff would be slightly more limited. (AR at 216.) However, it is up to the ALJ to resolve conflicts and ambiguities in the medical evidence. Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir. 2008); Andrews, 53 F.3d at 1039-40. The ALJ's decision to adopt one examining source's opinion over another examining source's opinion was a rational resolution of conflicting evidence. See Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) ("we must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

With regard to Plaintiff's mental limitations, Dr. Bagner examined Plaintiff and concluded that Plaintiff would have no limitations in interacting with supervisors, coworkers, and the public, and zero to mild limitations in maintaining concentration and attention and completing simple tasks. (AR at 352.) He opined further that Plaintiff would have mild limitations in completing complex tasks, and also mild to moderate limitations in handling normal work stresses and in completing a normal workweek without interruption. (Id.) Dr. Bagner's findings were consistent with the demands of unskilled work. See Social Security Ruling 85-15 ("[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting"); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174-76 (9th Cir. 2008) (RFC finding for unskilled work is consistent with finding that claimant had moderate limitations in persistence, pace, and concentration). Dr. Bagner's opinion constitutes substantial

evidence. See Tonapetyan, 242 F.3d at 1149.

Moreover, the ALJ could simply have limited Plaintiff to unskilled work as suggested by Dr. Bagner, but, in fact, he gave Plaintiff the benefit of the doubt with respect to her alleged agoraphobia and panic disorder, and limited Plaintiff to nonpublic work with only superficial interaction with coworkers and supervisors. (AR at 307.) Thus, the ALJ's determination of Plaintiff's mental RFC was supported by substantial evidence. See Bayliss, 427 F.3d at 1217.

Finally, for the reasons discussed in Part III.C supra, the ALJ properly rejected Dr. Afghan's and Dr. Quion's opinions to the extent that they differed from the ALJ's RFC determination. Thus, there was no error.

**E.     Hypothetical to the VE.**

Plaintiff contends the hypothetical posed to the VE was insufficient because it failed to take into account Plaintiff's panic disorder and agoraphobia, as well as the limitations posited by Dr. Quion in her Medical Opinion. (JS at 18.)

"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956 (quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995)). Hypothetical questions posed to a VE need not include all alleged limitations, but rather only those limitations which the ALJ finds to exist. See, e.g., Magallanes, 881 F.2d at 756-57; Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986). As a result, an ALJ must propose a hypothetical that is based on medical assumptions, supported by substantial evidence in the record, that reflects the claimant's limitations. Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995)); see also Andrews, 53 F.3d at 1043 (although the hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be supported by the record).

Here, as stated above, the ALJ properly rejected the opinions of Drs. Afghan and Quion.  See supra, Discussion Part III.C.  Accordingly, there was no error in the ALJ's hypothetical questions to the VE which did not include all of the limitations prescribed by these doctors.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that Rollins had claimed, but had failed to prove.").

Moreover, in his hypothetical to the VE, the ALJ specifically took Plaintiff's panic disorder and agoraphobia into account when he introduced limitations into the hypothetical of mental and emotional problems requiring that the work be routine, repetitive, entry level, minimally stressful, with only a superficial degree of interpersonal contact with supervisors and coworkers.  (AR at 375.)

The Court also notes that the testimony of the VE suggested that she understood the hypothetical to limit the hypothetical individual to light work.  (Id. at 374.)  The fact that the VE's testimony responded to an understanding of Plaintiff's functionality that was even more restrictive than that found by the ALJ, however, was harmless.  Johnson v,. Shalala, 60 F.3d 1428, 1436 (9th Cir. 1995) (ALJ may rely on VE's testimony when the VE based his testimony "on an understanding of the limitations of the claimant even more generous to her in the hypothetical than the ALJ's findings").  Thus, there was no error.

**F.     Jobs of Mail Clerk, Library Page, and Cleaner.**

Plaintiff contends that the jobs of mail clerk, library page, and cleaner require reaching, handling, fingering, feeling, and/or environmental exposure to dust, odor, and fumes from common cleaning products in contradiction with the limitations posited in Dr. Quion's Medical Opinion.  (JS at 20-21.)  She claims, therefore, that the ALJ improperly failed to explain his deviation from the noted

limitations. (Id. at 21.)

As previously discussed, the ALJ properly rejected the opinions of Dr. Afghan and Dr. Quion. (See Discussion supra Part III.C.) Thus, there was no need for him to explain any deviation from Dr. Quion's findings. Osenbrock, 240 F.3d at 1164-65; Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993).

## IV.
## ORDER

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: March 24, 2010

HONORABLE OSWALD PARADA
United States Magistrate Judge